UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAUDA ILIYA,<br><br>        Plaintiff,<br><br>    v.<br><br>UNITED STATES MARSHALS SERVICE,<br><br>        Defendant. | Case No. 24-cv-03720-TSH<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 11 |

## I.    INTRODUCTION

Plaintiff Dauda Iliya brings this case against the United States Marshals Service ("USMS"), alleging security officers at the entrance to the Ronald V. Dellums Federal Courthouse in Oakland, California forced him to remove his religious cap.  USMS seeks an order dismissing the complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim upon which relief can be granted under Rule 12(b)(6).  ECF No. 11.  Plaintiff filed an Opposition (ECF No. 15)[1] and USMS filed a Reply (ECF No. 17).  For the reasons stated below, the Court **GRANTS** the motion.[2]

---

[1] After Plaintiff initially failed to file an opposition, the Court ordered him to show cause why this case should not be dismissed for failure to prosecute and failure to comply with court deadlines.  ECF No. 13.  Plaintiff subsequently filed a declaration explaining the delay.  ECF No. 15-1.  Accordingly, the Court **DISCHARGES** the show cause order.

[2] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 7, 10.

## II.  BACKGROUND

Plaintiff states he has a sincerely held religious belief that requires him to wear a "religious cap" "that covers [his] ears or can be positioned to cover [his] ears, as a measure to reduce the likelihood of airborne germ exposure." Compl. ¶ 15, ECF No. 1. He states that wearing the cap is necessary "in the presence of others when others sneeze in my vicinity." *Id*. Plaintiff states this religious practice is supported by his interpretation of biblical verses. *Id*.

On March 17, 2023, Plaintiff visited the Ronald V. Dellums Federal Courthouse in Oakland, California, with the intention of filing documents with the Clerk of Court. *Id*. ¶ 16. Plaintiff states several court security officers or "John Does," who he speculates were "U.S. Marshals," were stationed at the entrance of the courthouse for security purposes. *Id*. ¶ 17. One of these court security officers informed Plaintiff that he would not be permitted to enter the courthouse building unless he removed his cap. *Id*. ¶ 20. Plaintiff explained that he wore the cap "for religious purposes" and requested an accommodation to retain the cap while in the courthouse. *Id*. ¶ 21. After the officer insisted Plaintiff could not enter the courthouse building without removing the cap, he removed the cap "under duress" so that he could enter the courthouse and timely file documents with the Clerk of Court. *Id*. ¶¶ 23, 26.

Plaintiff submitted an administrative claim under the Federal Tort Claims Act ("FTCA") to USMS on or around March 20, 2023. *Id.* ¶ 29. He states that USMS formally denied his administrative claim on December 19, 2023. *Id*. ¶ 31.

Plaintiff filed this case on June 20, 2024, naming USMS and Does 1-10 as defendants. The complaint is premised on 42 U.S.C. § 1983 and alleges seven causes of action: (1) violation of his First Amendment rights, (2) violation of 41 C.F.R. § 102-74.445, (3) violation of the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb, et seq. ("RFRA"), (4) intentional infliction of emotional distress, (5) negligence, (6) discrimination or retaliation under Title VII, and (7) violation of his due process rights under the Fifth Amendment. Compl. ¶¶ 1, 34-88. Plaintiff seeks $3,120,210 in monetary damages as well as equitable relief prohibiting USMS "from enforcing policies that unlawfully restrict Plaintiff's religious practices." *Id.* at 16. Plaintiff also demands attorney's fees and a jury trial. *Id.*

1    USMS filed the present motion on September 9, 2024. It argues Plaintiff's claims are all
2 subject to dismissal for lack of subject matter jurisdiction because he does not identify a statutory
3 waiver of sovereign immunity for these claims and/or does not allege facts suggesting that there is
4 a plausible risk of repeated injury. Mot. at 1. USMS also argues the security officers at the
5 entrance to the Oakland courthouse are not Deputy U.S. Marshals (as Plaintiff alleges), but rather
6 are independent contractors employed by Metropolitan Security Services, Inc. dba Walden
7 Security. Accordingly, none of the conduct alleged in the complaint is fairly traceable to USMS,
8 and the lawsuit should be dismissed for lack of Article III standing. *Id.* at 1-2. Even if the Court
9 has subject matter jurisdiction over this lawsuit, USMS argues Plaintiff's FTCA claims should be
10 dismissed under Federal Rule of Civil Procedure 12(b)(6) because he did not file suit in federal
11 court until more than six months after the date he alleges the agency finally denied his
12 administrative tort claim. *Id.* at 2.

### III.   LEGAL STANDARDS

**A.    Rule 12(b)(1)**

Federal district courts are courts of limited jurisdiction: "They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citation omitted). Accordingly, "[i]t is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.*; *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

Federal Rule of Civil Procedure 12(b)(1) authorizes a party to move to dismiss a lawsuit for lack of subject matter jurisdiction. A jurisdictional challenge may be facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Where the attack is facial, the court determines whether the allegations contained in the complaint are sufficient on their face to invoke federal jurisdiction, accepting all material allegations in the complaint as true and construing them in favor of the party asserting jurisdiction. *Warth v. Seldin*, 422 U.S. 490, 501 (1975). Where the attack is factual, however, "the court need not presume the truthfulness of the plaintiff's allegations." *Safe Air for Everyone*, 373 F.3d at 1039. In resolving a factual dispute as

3

to the existence of subject matter jurisdiction, a court may review extrinsic evidence beyond the complaint without converting a motion to dismiss into one for summary judgment. *Id.*; *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (holding that a court "may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction").

Dismissal of a complaint without leave to amend should only be granted where the jurisdictional defect cannot be cured by amendment. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

**B. Rule 12(b)(6)**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim. A claim may be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and quotation marks omitted). Rule 8 provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Twombly*, 550 U.S. at 555 (quotations and citation omitted).

In considering a motion to dismiss, the court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly

be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citations and quotations omitted). A court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . ., [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## IV. DISCUSSION

### A. 42 U.S.C. § 1983

Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Ketchum v. Alameda County*, 811 F.2d 1243, 1245 (9th Cir. 1987).

USMS first argues that any claims Plaintiff seeks to bring under 42 U.S.C. § 1983 are subject to dismissal because he does not identify a statutory waiver of sovereign immunity. "It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."[3] *United States v. Mitchell*, 463 U.S. 206, 212 (1983); *see also United States v. Sherwood*, 312 U.S. 584, 586 (1941) ("The United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain suit.") (citations omitted). The federal government may waive its sovereign immunity by statute, but that waiver "must be unequivocally

---

[3] Damages actions against federal agencies such as USMS are suits against the sovereign. *Land v. Dollar*, 330 U.S. 731, 738 (1947); *Hodge v. Dalton*, 107 F.3d 705, 707 (9th Cir. 1997) (citing *S. Delta Water Agency v. U.S. Department of the Interior*, 767 F.2d 531, 536 (9th Cir. 1985)).

expressed in statutory text." *Lane v. Peña*, 518 U.S. 187, 192 (1996) (citing *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33–34, 37 (1992)). Waivers may not be implied. *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95 (1990); *Soriano v. United States*, 352 U.S. 270, 276 (1957). And courts must "strictly construe[ ]" any waiver of sovereign immunity, "in terms of its scope, in favor of the sovereign." *Lane*, 518 U.S. at 192 ("To sustain a claim that the Government is liable for awards of monetary damages, the waiver of sovereign immunity must extend unambiguously to such monetary claims.") (citation omitted); *Sherwood*, 312 U.S. at 590 (collecting cases). As such, plaintiffs bear the burden of establishing "some form of statutory authorization for their claims." *Alvarado v. Table Mountain Rancheria*, 509 F.3d 1008, 1016 (9th Cir. 2007). Absent a waiver of sovereign immunity the action must be dismissed for lack of subject matter jurisdiction. *Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir. 1985).

Here, the federal government has not waived sovereign immunity for claims under § 1983. *See Saucerman v. Norton*, 51 F. App'x 241, 243 (9th Cir. 2002) (Section 1983 "contain[s] no explicit waiver of sovereign immunity by the federal government"). Indeed, as the Ninth Circuit has noted, "[l]est there be any continuing confusion, we take this opportunity to remind the Bar that by its very terms, Section 1983 precludes liability in federal government actors." *Morse v. N. Coast Opportunities, Inc.*, 118 F.3d 1338, 1343 (9th Cir. 1997); *see also Daly-Murphy v. Winston*, 837 F.2d 348, 355 (9th Cir. 1987) (no valid basis for § 1983 claim against federal actors); *Barrera v. Dep't of Homeland Sec.*, 2022 WL 18539662, at *4 (N.D. Cal. Sept. 12, 2022) (same). Thus, as a federal actor, USMS cannot be liable under § 1983.[4] *Morse*, 118 F.3d at 1343.

---

[4] In his opposition, Plaintiff acknowledges that 42 U.S.C. § 1983 "is inapplicable to federal actors," but he argues he can bring his constitutional violation claims against USMS pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Opp'n at 8-9. However, Plaintiff does not raise this claim in his complaint, and he cannot amend his complaint through an opposition brief. *See Harrison v. Robinson Rancheria Band of Pomo Indians Bus. Council*, 2013 WL 5442987, at *4 (N.D. Cal. Sept. 30, 2013) ("It is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss.") (quoting *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1145 (N.D. Cal. 2010)). Further, the only named defendant in this lawsuit is USMS, and Supreme Court precedent demonstrates that *Bivens* claims cannot be maintained against a federal agency. *F.D.I.C. v. Meyer*, 510 U.S. 471, 486 (1994) (a *Bivens* action for monetary damages for alleged constitutional violations cannot be maintained against a federal agency); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 69 (2001) (same); *see also W. Radio Servs. Co. v. United States Forest Serv.*, 578 F.3d 1116, 1119 (9th Cir. 2009) ("At the outset, we note that the Supreme Court has held that no *Bivens* remedy is available against a

1  Accordingly, the Court **GRANTS** USMS's motion to dismiss Plaintiffs 42 U.S.C. § 1983

2  claims against USMS **WITHOUT LEAVE TO AMEND**.

### B.     First and Fifth Amendment Claims

Assuming Plaintiff's constitutional claims do not arise under § 1983, USMS argues they are still subject to dismissal.

The First Amendment's Establishment Clause provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I.  In his First Amendment claim, Plaintiff alleges his "religious practice of wearing a religious cap is a sincere and deeply held belief that falls squarely within the protection of the First Amendment" and that "[d]espite my explanation of the religious significance of the attire, Defendants imposed a restriction that directly interfered with my ability to freely exercise my religion by denying me access to a government facility and services based solely on my religious attire."  Compl. ¶¶ 38-39.

The Due Process Clause of the Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.  In his Fifth Amendment claim, Plaintiff alleges he "had a constitutionally protected liberty interest in accessing the court clerk's office to file documentation without undue interference or discrimination based on my religious attire," and "Defendants, as federal agents acting under color of federal law, deprived me, the Plaintiff, of my constitutionally protected liberty interest without affording me adequate procedural safeguards or justification."  Compl. ¶¶ 84-85.

USMS argues these claims should be dismissed because the federal government has not waived sovereign immunity for monetary damages for constitutional violations. Mot. at 6.  The Court agrees. *See Meyer*, 510 U.S. at 486 (an action for monetary damages for alleged constitutional violations cannot be maintained against a federal agency); *Hulstedt v. California*, 2023 WL 9189316, at *2 (N.D. Cal. May 19, 2023), *aff'd*, No. 23-15966, 2023 WL 9193060 (9th Cir. Oct. 24, 2023) (there is no "statute generally waiving sovereign immunity as to money

---

federal agency").

7

1    damages arising from a fifth amendment due process violation") (quoting *Karahalios v. Def.*
2    *Language Inst. Foreign Language Ctr. Presidio of Monterey*, 534 F. Supp. 1202, 1212 (N.D. Cal.
3    1982)); *Williams v. Lew*, 2016 WL 4119954, at *3 (C.D. Cal. June 16, 2016), *report and*
4    *recommendation adopted*, 2016 WL 4107650 (C.D. Cal. July 28, 2016) (same); *Holly v. Jewell*,
5    196 F. Supp. 3d 1079, 1091-92 (N.D. Cal. 2016) (dismissing First Amendment claim for monetary
6    damages as "barred by the doctrine of sovereign immunity"). As such, any claim for monetary
7    damages against USMS under the First and Fifth Amendments must be dismissed.

8          To the extent Plaintiff seeks equitable relief, USMS argues his claims are still subject to
9    dismissal because he does not allege facts showing a real and immediate threat of repeated injury.
10   Mot. at 6-7. A plaintiff can sue the federal government and its agencies for equitable relief based
11   on violations of the First Amendment and/or Fifth Amendment. Through the Administrative
12   Procedure Act, Congress provided a general waiver of the government's sovereign immunity from
13   injunctive relief. 5 U.S.C. §§ 701–02; *see also Mitchell*, 463 U.S. at 227 n.32 (Congress generally
14   waived the government's immunity from suit for injunctive relief in § 702). The Ninth Circuit has
15   held that § 702 serves as "an unqualified waiver of sovereign immunity in actions seeking
16   nonmonetary relief against legal wrongs for which governmental agencies are accountable." *The*
17   *Presbyterian Church (U.S.A.) v. United States*, 870 F.2d 518, 525 (9th Cir. 1989); *see also Navajo*
18   *Nation v. Dep't of the Interior*, 876 F.3d 1144 (9th Cir. 2017). "This waiver is not limited to suits
19   under the Administrative Procedure Act." *Simmat v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1233
20   (10th Cir. 2005); *see The Presbyterian Church (U.S.A.)*, 870 F.2d at 524-26 (recognizing waiver
21   of the government's sovereign immunity in actions seeking equitable relief under the First and
22   Fourth Amendments); *Ramon by Ramon v. Soto*, 916 F.2d 1377, 1383 (9th Cir. 1989) (recognizing
23   waiver of the government's sovereign immunity in actions seeking equitable relief under the Fifth
24   Amendment).

25         However, in order to bring a claim for equitable relief, Plaintiff must still establish
26   standing, which "is an essential and unchanging part of the case-or-controversy requirement of
27   Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To establish standing, a
28   plaintiff must demonstrate "(1) a concrete and particularized injury that is 'actual or imminent, not

1    conjectural or hypothetical'; (2) a causal connection between the injury and the defendant's
2    challenged conduct; and (3) a likelihood that a favorable decision will redress that injury."
3    *Pyramid Lake Paiute Tribe of Indians v. Nev. Dep't of Wildlife*, 724 F.3d 1181, 1187 (9th Cir.
4    2013) (quoting *Lujan*, 504 U.S. at 560–61.  To establish Article III standing for injunctive relief, a
5    plaintiff "cannot rely solely on past injury and instead must demonstrate 'a sufficient likelihood
6    that [he] will again be wronged in a similar way' and a 'real and immediate threat of repeated
7    injury.'"  *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th
8    664, 723 (9th Cir. 2023) (quoting *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir.
9    2007)).  Thus, "past wrongs do not in themselves amount to [the] real and immediate threat of
10   injury" necessary for standing.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983).  Rather, a
11   party must show "continuing, present adverse effects" of the defendant's actions.  *Id*. at 102.  A
12   threated injury "'must be *certainly impending* to constitute injury in fact,' and 'allegations of
13   *possible* future injury are not sufficient.'"  *Fellowship of Christian Athletes*, 82 F.4th at 723
14   (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)) (emphasis in original).
15        Here, Plaintiff does not allege facts suggesting there is an immediate threat of repeated
16   injury, as he does not allege USMS has a pattern or practice of refusing entry into the Ronald V.
17   Dellums Federal Courthouse unless visitors remove headgear.  *See Lovelady v. U.S. Customs &*
18   *Border Prot.*, 2024 WL 2788436, at *2 (N.D. Cal. May 30, 2024) (dismissing Fourth Amendment
19   claim for lack of standing where the plaintiff "has not alleged an official policy or ongoing
20   practice that might demonstrate 'a realistic possibility that the [Customs and Border Protection]
21   would subject him to the injurious acts again in the future'") (quoting *Updike v. Multnomah Cnty.*,
22   870 F.3d 939, 948 (9th Cir. 2017)).  Indeed, the complaint acknowledges that Plaintiff "has
23   attended numerous proceedings in front of different Judges spanning across multiple jurisdiction
24   [sic] and no Judges has [sic] ever order [sic] him to remove his cap."  Compl. ¶ 22.  This
25   admission appears to negate any plausible inference of likelihood of future similar injury.
26   Moreover, the complaint also fails to allege that Plaintiff intends to visit the Ronald V. Dellums
27   Federal Courthouse at any point in the future or that he is deterred from doing so because of the
28   events alleged in this lawsuit.  *Updike*, 870 F.3d at 947-48 (plaintiff must show behavior will

1  likely recur). Under these alleged facts, Plaintiff fails to establish Article III standing to seek

2  equitable relief for his constitutional violation claims. *Lovelady*, 2024 WL 2788436, at *2;

3  *Updike*, 870 F.3d at 947-48. As such, dismissal is appropriate.

4  Accordingly, the Court **GRANTS** USMS's motion to dismiss Plaintiff First and Fifth

5  Amendment claims. Dismissal is **WITHOUT LEAVE TO AMEND** with respect to any claim

6  for monetary damages. Dismissal is **WITH LEAVE TO AMEND** as to any claim for equitable

7  relief, but only if Plaintiff can allege (1) an immediate threat of repeated injury, and (2) that he

8  intends to visit the Ronald V. Dellums Federal Courthouse at any point in the future or that he is

9  deterred from doing so because of the events alleged in this lawsuit.

### C. Religious Freedom Restoration Act

Under the RFRA, "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability," unless the government can demonstrate that the application of the burden "is in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb–1(a), (b). "To establish a prima facie RFRA claim, a plaintiff must present evidence sufficient to allow a trier of fact rationally to find the existence of two elements. First, the activities the plaintiff claims are burdened by the government action must be an 'exercise of religion.'" *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1068 (9th Cir. 2008) (quoting 42 U.S.C. § 2000bb–1(a)), *overruled on other grounds by Apache Stronghold v. United States*, 95 F.4th 608 (9th Cir. 2024). "Second, the government action must 'substantially burden' the plaintiff's exercise of religion." *Id.* (quoting 42 U.S.C. § 2000bb–1(a)).

Plaintiff alleges "[w]earing a religious cap is an exercise of my sincerely held religious beliefs, protected under RFRA," "USMS's "actions in denying me access to the court clerk's office unless I removed my religious cap substantially applied burden, imposing upon my exercise of religion and was done by the pre-mentioned Federal employees without a compelling governmental interest," USMS's "actions were not the least restrictive means of furthering any governmental interest, nor were they necessary to achieve any legitimate security or operational goal of the federal facility," and "[b]y enforcing a policy or practice that substantially burdened

United States District Court
Northern District of California

1   Plaintiff's religious exercise without justification, Defendants violated Plaintiff's rights under

2   RFRA." Compl. ¶¶ 54-57.  USMS argues Plaintiff's RFRA claim fails because (1) the RFRA

3   does not waive the federal government's sovereign immunity from damages and (2) to the extent

4   he seeks equitable relief, Plaintiff does not demonstrate a plausible risk of certainly impending

5   repeated injury.  Mot. at 8.

6       As to any claim for damages, it is well established that "RFRA does not waive the federal

7   government's sovereign immunity from damages." *Oklevueha Native Am. Church of Haw., Inc. v.*

8   *Holder*, 676 F.3d 829, 840 (9th Cir. 2012); *Donovan v. Vance*, 70 F.4th 1167, 1172 (9th Cir. 2023)

9   (same).  As such, any claim against USMS for monetary damages must be dismissed.  To the

10  extent Plaintiff's RFRA claim is limited to equitable relief, as noted above, a general waiver of

11  sovereign immunity in actions against the United States for injunctive relief can be found in 5

12  U.S.C. § 702 of the Administrative Procedures Act.  However, Plaintiff must still establish

13  standing, and he has alleged no facts suggesting there is an immediate threat of repeated injury, as

14  he does not allege USMS has a pattern or practice of refusing entry into the Ronald V. Dellums

15  Federal Courthouse unless visitors remove headgear, nor does he allege he intends to visit the

16  Ronald V. Dellums Federal Courthouse at any point in the future or that he is deterred from doing

17  so because of the events alleged in this lawsuit.  Accordingly, dismissal is appropriate for lack of

18  standing.  *Lovelady*, 2024 WL 2788436, at *2; *Updike*, 870 F.3d at 947-48.

19      Accordingly, the Court **GRANTS** USMS's motion to dismiss Plaintiff RFRA claim.

20  Dismissal is **WITHOUT LEAVE TO AMEND** with respect to any claim for monetary damages.

21  Dismissal is **WITH LEAVE TO AMEND** as to any claim for equitable relief, but only if Plaintiff

22  can allege (1) an immediate threat of repeated injury, and (2) that he intends to visit the Ronald V.

23  Dellums Federal Courthouse at any point in the future or that he is deterred from doing so because

24  of the events alleged in this lawsuit.

25  **D.  Intentional Infliction of Emotional Distress and Negligence**

26      As a preliminary matter, Plaintiff's tort claims against the government may only be

27  brought under the FTCA, which provides the exclusive remedy for persons injured by the

28  negligent or wrongful acts or omissions of any employee of the government while acting within

the scope of employment. 28 U.S.C. §§ 1346(b)(1), 2679(b)(1); *Kennedy v. U.S. Postal Serv.*, 145 F.3d 1077, 1078 (9th Cir. 1998) (per curiam) ("The FTCA is the exclusive remedy for tort actions against a federal agency."); *LaBarge v. Mariposa Cnty.*, 798 F.2d 364, 366 (9th Cir. 1986) (The FTCA is a "limited waiver" of the federal government's sovereign immunity.). As a result, the Court lacks jurisdiction over Plaintiff's state tort claims against the USMS.

Assuming for purposes of this motion that Plaintiff brought claims under the FTCA,[5] the FTCA is a "limited waiver" of the federal government's sovereign immunity. *LaBarge*, 798 F.2d at 366. Thus, Plaintiff's claims are subject to the FTCA's limitations on the federal government's waiver of sovereign immunity. An FTCA action lies against the United States and not its agencies. 28 U.S.C. § 2679(a); *see also Kennedy*, 145 F.3d at 1078; *FDIC v. Craft*, 157 F.3d 697, 706 (9th Cir. 1998); *Domantay v. United States Dep't of Veterans Affairs*, 2018 WL 10501631, at *2 (N.D. Cal. Dec. 10, 2018) (granting motion to dismiss agency defendant for lack of jurisdiction because "[t]he United States is the only proper party defendant in a FTCA action"). Thus, because USMS is the only named defendant, Plaintiff's tort claims against it must be dismissed.

Even if they were brought against the United States, USMS argues Plaintiff's FTCA claims would be subject to dismissal under Rule 12(b)(6) because he did not initiate suit in federal court within six months of the date he alleges USMS formally denied his administrative claim (i.e., December 19, 2023). Mot. at 14. "A tort claim against the United States shall be forever barred . . . unless action is begun within six months after the date of mailing . . . of notice of final denial of the claim by the agency to which it was presented." 28 U.S.C. § 2401(b). Thus, an FTCA action may not be maintained when the claimant fails to exhaust administrative remedies prior to filing suit. *Jerves v. United States*, 966 F.2d 517, 518-19 (9th Cir. 1992). Here, Plaintiff filed the complaint on June 20, 2024, which is six months and one day after the alleged date of USMS's formal denial on December 19, 2023. Compl. ¶ 31. The Ninth Circuit has found FTCA claims initiated in federal court six months and one day after the date of mailing to be untimely.

---

[5] Although Plaintiff does not explicitly state a claim under the FTCA, he alleges his "claim to the U.S. Marshals satisfied prerequisites to a lawsuit against Federal Government employee/agency pursuant to the Federal Tort Claims Act." Compl. ¶ 30.

*See Adams v. United States*, 658 F.3d 928, 934 (9th Cir. 2011) (holding that FTCA claims filed "six months and one day after the date which appears on the letters denying the administrative claims" were "forever barred" under 28 U.S.C. § 2401(b)) (emphasis added); *see also Alonzo v. United States*, 2017 WL 3264010, at *1 (E.D. Cal. Aug. 1, 2017) (holding that when plaintiffs filed their complaint six months and one day after the agency mailed its denial letter, the plaintiffs' claim was forever barred by the FTCA's statute of limitations).

Plaintiff argues he is permitted to file his FTCA claims in federal court six months and one day after the date of mailing because Federal Rule of Civil Procedure 6(a)(1)(A) excludes the date the tort claim rejection was mailed from the calculation. Opp'n at 3. However, "Rule 6 only applies after a lawsuit has commenced." *Eyre v. Huber*, 2019 WL 4246703, at *3-4 (D. Utah Sept. 6, 2019) (further holding that "Rule 6 does not override or replace the timeliness requirements of the FTCA process outlined in 28 U.S.C. § 2401(b)"); *see also Velez-Diaz v. United States*, 507 F.3d 717, 720 (1st Cir. 2007) (holding that nothing in Rule 6 "qualifies or extends a limitations period that refers, as the FTCA does, to the date of mailing of an exhaustion letter"); *Chandler v. United States*, 846 F. Supp. 51, 53 (M.D. Ala. 1994) (same).

Plaintiff next argues he "made every reasonable effort, as a pro se litigant, to comply with the deadline," and his "reasonable interpretation of the six-month rule should be afforded equitable consideration." Opp'n at 3-4. The limitations periods in 28 U.S.C. § 2401(b) are subject to the doctrine of equitable tolling. *See United States v. Wong*, 575 U.S. 402, 412 (2015). The doctrine of equitable tolling "focuses on whether there was excusable delay by the plaintiff." *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000). To establish equitable tolling, Plaintiff "bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." *Credit Suisse Secs. (USA) LLC v. Simmonds*, 566 U.S. 221, 227 (2012) (emphasis omitted) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). "The doctrine is not available to avoid the consequence of one's own negligence and does not apply when a late filing is due to claimant's failure to exercise due diligence in preserving his legal rights." *Hensley v. United States*, 531 F.3d 1052, 1058 (9th Cir. 2008) (cleaned up).

13

The Court finds Plaintiff fails to meet his burden here.  First, "the fact that plaintiff is pro se does not in itself justify an equitable tolling of the statute of limitations."  *Homer v. Henderson*, 2001 WL 228164, at *4 (N.D. Cal. Feb. 26, 2001) (citing *Scholar v. Pac. Bell*, 963 F.2d 264, 268 (9th Cir. 1992) (refusing to find equitable tolling where pro se plaintiff missed statutory deadline by three days)).  Second, miscalculating a limitations period "is simply not sufficient to warrant equitable tolling."  *Lawrence v. Florida*, 549 U.S. 327, 336-37 (2007); *see also Jones v. Cnty. of San Diego*, 2023 WL 8227562, at *1 (9th Cir. Nov. 28, 2023) ("Jones was not entitled to equitable tolling for miscalculating the limitations period."); *Wisenbaker v. Farwell*, 399 F. App'x 192, 194-95 (9th Cir. 2010) (incorrectly analyzing a statute of limitations is a "garden variety claim of excusable neglect [that] does not warrant equitable tolling").  Plaintiff provides no other reason why he waited until six months and one day after the date of mailing to file this case.  Instead, the record shows he incorrectly calculated the applicable statute of limitations, and that miscalculation—as a matter of law—does not warrant equitable tolling.  As such, to the extent Plaintiff seeks to bring tort claims against the government under the FTCA, those claims must be dismissed.

Accordingly, the Court **GRANTS** USMS's motion to dismiss Plaintiff's intentional infliction of emotional distress and negligence claims.  To the extent Plaintiff seeks to bring tort claims against the government under the FTCA, dismissal is **WITHOUT LEAVE TO AMEND**.

**E.    Title VII**

Plaintiff asserts a Title VII claim, alleging USMS discriminated and/or retaliated against him with respect to the alleged conduct on March 17, 2023.  Compl. ¶¶ 73-80.  However, Title VII forbids discrimination by employers based on an individual's race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2.  As such, Plaintiff's claim fails because he does not allege any employment relationship between himself and USMS.  *See Adcock v. Chrysler Corp.*, 166 F.3d 1290, 1292 (9th Cir. 1999) ("[T]here must be some connection with an employment relationship for Title VII protections to apply"); *Murray v. Principal Fin. Group, Inc.*, 613 F.3d 943, 944 (9th Cir. 2010) (A plaintiff "is entitled to the protections of Title VII only if she is an employee."); *Tipton v. Northrop Grumman Corp.*, 2009 WL 2969505, at *2 (E.D. La. Sept. 10, 2009) (Title VII

14

does not "include an explicit waiver of sovereign immunity permitting a nonemployee to file suit against the United States or one of its agencies or departments"). Accordingly, the Court **GRANTS** USMS's motion as to Plaintiff's Title VII claim. As Plaintiff does not address this claim in his opposition or otherwise seek leave to amend to establish the requisite employment relationship, dismissal is **WITHOUT LEAVE TO AMEND**.

### F.   41 C.F.R. § 102-74.445

Plaintiff also brings a claim under 41 C.F.R. § 102-74.445, which provides: "Federal agencies must not discriminate by segregation or otherwise against any person or persons because of race, creed, religion, age, sex, color, disability, or national origin in furnishing or by refusing to furnish to such person or persons the use of any facility of a public nature, including all services, privileges, accommodations, and activities provided on the property." A federal regulation by itself, however, may not create a private right of action. *See Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). When a plaintiff alleges a party violated a federal regulation, the right to sue based on that violation must come from either explicit or implied Congressional authorization for a private right of action. *Id.* at 288-91. Without Congress intending to create a private right of action, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id.* at 286–87.

Here, the relevant statute is 40 U.S.C. § 121. Section 121(c)(1) provides "The Administrator [of General Services] may prescribe regulations to carry out this subtitle," and § 121(c)(2) mandates that the Administrator "prescribe regulations that the Administrator considers necessary to carry out the Administrator's functions under this subtitle." "Nowhere in the statute does the text provide for an express private right of action." *Sofia v. Esposito*, 2019 WL 6529432, at *7 (S.D.N.Y. Dec. 4, 2019). Thus, 40 U.S.C. § 121 must provide an implied private right for Plaintiff to be able to rely on § 102-74.445 for federal question jurisdiction. *See Nisqually Indian Tribe v. Gregoire*, 623 F.3d 923, 929–30 (9th Cir. 2010) (Court must determine whether Congress implied a private right of action if Congress does not provide one explicitly within a statute's text).

The Supreme Court has explained that what matters is whether a statute shows the intent to create a private cause of action, and not whether a regulation authorized by the statute provides

15

1 that intent. *Alexander*, 532 U.S. at 291. In analyzing statutes for the existence of implied rights of

2 action, the Ninth Circuit "consider[s] the statute's language, structure, context, and legislative

3 history to determine whether a private right of action is implied." *Lil' Man in the Boat, Inc. v.*

4 *City and Cnty. of San Francisco*, 5 F.4th 952, 958 (9th Cir. 2021) (citing *Logan v. U.S. Bank Nat.*

5 *Ass'n*, 722 F.3d 1163, 1170 (9th Cir. 2013)). "[C]lear and unambiguous terms" are "required for

6 Congress to create new rights enforceable under an implied private right of action." *Gonzaga*

7 *Univ. v. Doe*, 536 U.S. 273, 290 (2002). "For a statute to create private rights, its text must be

8 phrased in terms of the persons benefitted." *Id.* at 274.

9 It is clear from the text and structure of 40 U.S.C. § 121 that Congress had no intention of

10 creating an implied private right of action. With the exception of § 121(b), which discusses the

11 Comptroller General, the statute is focused entirely on the duties and powers of the Administrator

12 of General Services. In no way does the statute discuss the creation of rights for any individual,

13 nor does it speak of "persons benefitted." "40 U.S.C. § 121 is framed as a directive to the

14 Administrator, providing the authority by which the Administrator may prescribe regulations or

15 delegate authority, amongst other actions." *Sofia*, 2019 WL 6529432, at *7. Further, although the

16 statute itself does not provide an express enforcement mechanism, 41 C.F.R. § 102-74.450 states:

17 "A person found guilty of violating any rule or regulation in this subpart . . . shall be fined under

18 title 18 of the United States Code, imprisoned for not more than 30 days, or both." "Plaintiff's

19 proffered regulation thus provides its own enforcement mechanism — criminal penalties — which

20 'suggests that other means of enforcement are precluded.'" *Sofia*, 2019 WL 6529432, at *7

21 (dismissing claim under 41 C.F.R. § 102-74.390, finding regulation could not serve as a basis for

22 subject matter jurisdiction) (quoting *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 331-

23 32 (2015)).

24 Given Plaintiff's lack of standing to pursue a violation of 41 C.F.R. § 102-74.445, the

25 Court **GRANTS** USMS's motion to dismiss this claim **WITHOUT LEAVE TO AMEND**.

26 **G.    Leave to Amend to Add Additional Claims**

27 In his opposition, Plaintiff requests leave to amend to add claims against USMS or the

28 United States under Title VI and the ADA. However, courts "have consistently held that 'Title VI

does not apply to programs conducted directly by federal agencies." *Schultz v. Harry S. Truman Scholarship Found.*, 2021 WL 5712159, at *4 (N.D. Cal. Dec. 2, 2021) (quoting *Halim v. Donovan*, 951 F. Supp. 2d 201, 207 (D.D.C. 2013)); *see also, e.g., Colen v. United States*, 2008 WL 2051697, at *15 (C.D. Cal. May 12, 2008), *aff'd*, 368 F. App'x 837 (9th Cir. 2010) (collecting cases finding no private right of action under Title VI against a federal entity). Similarly, the ADA does not apply to the United States or federal agencies. *See Swinton v. Dep't of Just.*, 2024 WL 694481, at *3 (N.D. Cal. Feb. 20, 2024); *see also* 42 U.S.C. § 12131(1)(A) & (B) ("public entity" includes any state or local government or any department, agency, special purpose district or other instrumentality of a state or states or local government); *Clagett v. Woodring*, 2008 WL 11461743, at *4 (C.D. Cal. Oct. 29, 2008) (collecting cases). Accordingly, leave to amend to add these claims against USMS would be futile, and the Court **DENIES** Plaintiff's request.

Plaintiff also argues he can obtain relief for his physical, emotional, and economic damages through California's Bane Act. Opp'n at 13. The Bane Act, Cal. Civ. Code § 52.1(c), created a state law cause of action for damages arising out of interference with "rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state"); *Venegas v. Cnty. of Los Angeles*, 32 Cal. 4th 820 (2004); *Reynolds v. County of San Diego*, 84 F.3d 1162, 1170 (9th Cir. 1996) ("[The Bane Act] does not provide any substantive protections; instead, it enables individuals to sue for damages as a result of constitutional violations."), *overruled on other grounds by Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997). However, the complaint does not cite the Bane Act, and Plaintiff cannot amend his complaint through an opposition brief. *See Harrison*, 2013 WL 5442987, at *4.

Moreover, a Bane Act claim against USMS (or the United States) would fail because there is no private-person analogue. Under the FTCA, the United States can only be sued "if a private person[] would be liable" in like circumstances. 28 U.S.C. § 1346(b)(1). The FTCA does not waive sovereign immunity for claims against the United States based on governmental "action of the type that private persons could not engage in and hence could not be liable for under local law." *Chen v. United States*, 854 F.2d 622, 626 (2d Cir. 1988) (internal quotes omitted). The FTCA "requires a court to look to the state-law liability of private entities, not to that of public

17

entities, when assessing liability under the FTCA." *United States v. Olson*, 546 U.S. 43, 45-46 (2005). Though the private analogue need not be exact, a plaintiff must offer "a persuasive analogy" showing that the government actor sued would be subject to liability under state law if it were a private person. *Westbay Steel, Inc. v. United States*, 970 F.2d 648, 650 (9th Cir. 1992).

Although Plaintiff's invocation of the Bane Act discusses his claimed damages and not the legal theories underpinning those damages, these proposed claims appear to be based on alleged due process violations. *See* Opp'n at 14 (stating that the "Bane Act (California Civil Code § 52.1) provides grounds for the plaintiff's due process violation claim related to conspiracy and civil rights infringement"). However, because "private person[s]" cannot be held liable for federal constitutional violations, the Supreme Court has held that "the United States simply has not rendered itself liable under § 1346(b) for constitutional tort claims." *Meyer*, 510 U.S. at 478. Applying *Meyer*, the Ninth Circuit has held that a "district court lacked subject matter jurisdiction over [a] Bane Act claim," where the "Bane Act claim imports a constitutional violation . . . that could not otherwise be the basis for a claim against a private person." *Lewis v. Mossbrooks*, 788 F. App'x 455, 460 (9th Cir. 2019). Accordingly, leave to amend to add Bane Act claims against USMS (or the United States) for alleged constitutional due process violations would be futile, and the Court **DENIES** Plaintiff's request.

## V.   CONCLUSION

For the reasons stated above, the Court **GRANTS** USMS's motion to dismiss as follows:

1) Plaintiff's 42 U.S.C. § 1983 claims are **DISMISSED WITHOUT LEAVE TO AMEND**;
2) Plaintiff's First and Fifth Amendment claims are **DISMISSED WITHOUT LEAVE TO AMEND** as to any claim for monetary damages and **DISMISSED WITH LEAVE TO AMEND** as to any claim for equitable relief;
3) Plaintiff's Religious Freedom Restoration Act claim is **DISMISSED WITHOUT LEAVE TO AMEND** as to any claim for monetary damages and **DISMISSED WITH LEAVE TO AMEND** as to any claim for equitable relief;
4) Plaintiff's claims for Intentional Infliction of Emotional Distress and Negligence are **DISMISSED**. To the extent Plaintiff seeks to bring tort claims against the government

(including under the FTCA), dismissal is **WITHOUT LEAVE TO AMEND**.

5) Plaintiff's Title VII claim is **DISMISSED WITHOUT LEAVE TO AMEND**; and

6) Plaintiff's 41 C.F.R. § 102-74.445 claim is **DISMISSED WITHOUT LEAVE TO AMEND**.

To the extent Plaintiff seeks to add claims against USMS or the United States under Title VI, the ADA, and the Bane Act, leave to amend is **DENIED**.

If he chooses to do so, Plaintiff may file a first amended complaint by January 21, 2025. Failure to do so may result in dismissal of this case. Plaintiff should be mindful to name the correct defendant(s) for each claim.

## A.     REQUIREMENTS FOR AMENDED COMPLAINT

Because an amended complaint replaces the previous complaint, any amended may not incorporate claims or allegations in the original complaint by reference. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992). Instead, any amendment must include all of the facts and claims to be presented and all of the defendants that are to be sued. In addition, any amended complaint must include the following sections:

> **Caption Page**
> On the first page, list the names of the defendant(s), the case number used in this order (3:23-cv-0412 TSH), the title ("FIRST AMENDED COMPLAINT"), and write "Demand for Jury Trial" if you want your case to be heard by a jury.
>
> **Subject Matter Jurisdiction**
> The first numbered paragraph in your complaint (labeled "Jurisdiction") should explain why this Court has the power to decide this kind of case. A federal court can hear a case based on a federal question jurisdiction (a violation of federal law under 28 U.S.C. § 1331) or diversity jurisdiction (when all plaintiffs and all defendants are citizens of different states disputing more than $75,000) under 28 U.S.C. § 1332.
>
> **Parties**
> In separate paragraphs, identify the plaintiff(s) and the defendant(s) in the case.
>
> **Statement of Facts**
> Explain the important facts in your case in numbered paragraphs, describing how the defendant(s) violated the law and how you have been injured.
>
> **Claims**

>Include a separate heading for each legal claim (Claim 1, Claim 2, etc.), identifying the specific law that you think the defendant(s) violated and explaining what each defendant did to violate each law.

**B.   RESOURCES**

Plaintiff may wish to seek assistance from the Legal Help Center, a free service offered by the Justice & Diversity Center of the Bar Association of San Francisco. You may request an appointment by emailing fedpro@sfbar.org or calling 415-782-8982. At the Legal Help Center, you will be able to speak with an attorney who may be able to provide basic legal help but not representation. More information is available at http://cand.uscourts.gov/helpcentersf.

Plaintiff may also wish to obtain a copy of this District's *Handbook for Litigants Without a Lawyer*, which provides instructions on how to proceed at every stage of your case. The handbook is available in person at the Clerk's Office and online at: http://cand.uscourts.gov/prosehandbook.

**IT IS SO ORDERED.**

Dated: December 20, 2024

THOMAS S. HIXSON
United States Magistrate Judge